UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| YASH RAJ FILMS (USA) INC. | : |
| | : |
| | : CIVIL: 01 CV 5779 (JCL) |
| Plaintiffs, | : |
| | : |
| v. | : |
| | : |
| Rannade Corporation, Jayesh Modi, | : FINDINGS OF FACT |
| individually and d/b/a Vijay Music | : AND CONCLUSIONS OF LAW |
| Centre, Manisha Patel, individually and d/b/a: | RE: CONTEMPT AND AWARD |
| Vijay Music Centre | : OF DAMAGES |
| | : |
| Defendants. | : |

I.   <u>FINDINGS OF FACT</u>

    A.   <u>Stipulation of Settlement and Order entered October 9, 2002.</u>

        1.  Defendants Rannade Corporation ("Rannade"), Jayesh Modi

("Modi") and Manisha Patel ("Patel" and, collectively with Rannade and Modi,

the "Defendants") and their attorney, James B. Dudley, Esq. ("Dudley"), and

Plaintiff and Plaintiff's attorney signed a Stipulation of Settlement and Order

("Order") which was subsequently endorsed and signed by the Hon. Dennis M.

Cavanaugh, U.S.D.J. and entered on the court docket on October 9, 2002.

        2.  Among other things, the Order provided and the parties agreed

that:

(a)   "Plaintiff is the owner of the copyrights and/or exclusive

rights under copyright to distribute the motion pictures

listed in Exhibit "A" to Plaintiff's amended complaint (the

"Motion Pictures") in the United States and Canada in

various formats including, but not limited to, 35mm

(theatrical), video cassettes and digital versatile discs

(DVD's)…"

(b)   Defendants infringed Plaintiff's copyrights in and to

Plaintiff's Films "…in that, more particularly, infringing

copies of some of the Motion Pictures were offered for

retail sale and distributed by Defendants…"

(c)   "Plaintiff obtained unauthorized, infringing copies of the

Motion Pictures from the retail store located at 788 Newark

Avenue, Jersey City, NJ owned and operated by the Vijay

Music Defendants…"

(d)   The Defendants willfully and knowingly engaged in the

unauthorized transport, distribution and display for sale of

unauthorized, counterfeit copies of Plaintiff's Films.

(e)   The Defendants agreed to be, and the Court ordered that

they be permanently enjoined from:

"Infringing Plaintiff's copyrighted films including, but not

limited to, the Motion Pictures, by participating

individually or through any Affiliate or other third party in

any way in the unauthorized copying, purchasing,

importing, displaying, selling, reselling, possessing or

otherwise distributing unauthorized copies of Plaintiff's

copyrighted films including, but not limited to, the Motion

Pictures, in the United States and Canada; and,

"Offering to copy, purchase, import, display, sell, resell,

possess or otherwise distribute any unauthorized copies of

Plaintiff's copyrighted films including, but not limited to,

the Motion Pictures, in the United States and Canada; and,

"Utilizing in any way Plaintiff's copyrighted films

including, but not limited to, the Motion Pictures without

the written authorization of Plaintiff;…"

B.     The Order of Seizure and Impoundment and the Order to Show

Cause Re: Contempt (the "Order of Seizure and OTSC Re: Contempt")

1.  On August 19, 2003 Plaintiff filed and the Hon. Dennis M.

Cavanaugh, U.S.D.J. signed, the Order of Seizure and OTSC re: Contempt.

2.   Yash Raj had provided to the Court a list of Yash Raj Films as Exhibit "A" to Yash Raj's Amended Verified Complaint and Exhibit "A" to the declarations and documents submitted in support of Yash Raj's application for the Order of Seizure and OSTC re: Contempt (see, Exhibit "A" to Yash Raj's Amended Verified Complaint and Exhibit "A" to the Order of Seizure and OTSC re: Contempt.

3.   Yash Raj has submitted to the court all of Yash Raj's Certificates of Copyright Registration and relevant film rights acquisition agreement by which Yash Raj claims copyright and/or exclusive rights under copyright as Exhibit "B" to Yash Raj's Amended Verified Complaint; and, additional Certificates of Copyright Registration for motion pictures released by Plaintiff after Plaintiff filed its amended verified complaint were annexed as Exhibit "A" to Yash Raj's application for the Order of Seizure and OTSC re: Contempt.  See, Exhibit "A" to Plaintiff's Amended Verified Complaint and Exhibit "A" to the declarations submitted in support of Plaintiff's Order of Seizure and OTSC re: Contempt.  See, also Poppe testimony at p.248-249.

4.   Yash Raj has established its copyrights and exclusive rights under copyright in this case and in civil actions in other judicial Districts.

5.   There have been four cases of copyright infringement and unlawful labeling brought against Jayesh Modi and his Vijay Appliance/Vijay

Music Centre business commencing in 1999, including the instant matter against Mr. Modi and Rannade Corporation and Manisha Patel for distributing unauthorized copies of Yash Raj films.  Modi has been permanently enjoined three times and Patel once from distributing unauthorized infringing Indian media products. See, Poppe test. p.238-239; see also Modi test. p.170-177; see also, Plaintiff's exhibits "10" and "11"; see also Bhouraskar test.76, lines 1-5 and lines 13-210.

      6.  Plaintiff's investigator had purchased VHS cassettes containing unauthorized infringing copies of three Yash Raj Motion Pictures in which Plaintiff held the copyrights and/or exclusive rights under copyright at the Defendants' retail store: "Diwale Dulhania Le Jayenge", "Mohabbatein" and "Silsila".   Plaintiff's representative, Vaibhav Rajput, examined each of those VHS cassettes and confirmed that they contained counterfeit copies of the three Plaintiff's Films.  (See, Declaration of Vaibhav Rajput annexed to the Order of Seizure and OTSC re: Contempt at pp.3 and 4, ¶¶5 and 6; see also Declaration of Plaintiff's investigator annexed the Order of Seizure and OTSC re: Contempt, p. 3 ¶6; see also Exhibit "B-2" to the Order of Seizure.

      7.  The Order of Seizure authorized Plaintiff to seize counterfeit copies of all Plaintiff's Films, (including, but not limited to Plaintiff's Films "Saathiya" and "Awaara") in which Yash Raj holds the copyrights and/or

exclusive rights under copyright.  See, Poppe testimony p.243, lines 18-21, p. 244, lines 4-7, p.245, lines 1-2; see also, Order of Seizure and OTSC re: Contempt p.7; see also Exhibit "A" to Order of Seizure and OTSC re: Contempt; see also, Poppe test. p. 245, lines 17-25 and p.249, lines 1-25.

     8.  The Court in the Order of Seizure made certain findings of facts including, but not limited to the following:

    (i)    Plaintiff has obtained Certificates of Copyright Registration from the United States Copyright Office for 16 of Plaintiff's Films. See Order of Seizure, findings of fact at ¶1 pp. 4 ¶1

    (ii)    That Plaintiff's investigator had obtained copies of Plaintiffs' Films from the Defendants which Plaintiff's representative had identified  as unauthorized, counterfeit copies of Plaintiff's Films.  See, Order of Seizure, findings of fact, p.5 ¶2.

    (iii)    That Plaintiff had distributed authorized copies of Plaintiff's Films in the United States with notice of Plaintiff's copyright and Plaintiff's logo and tradename clearly printed on said authorized copies. See, Order of Seizure, findings of fact, p. 6 ¶5.

(iv)   That Plaintiff had informed Defendants that Plaintiff held the

copyright and/or exclusive rights under copyright to

Plaintiff's Films and warned Defendants against distributing

unauthorized copies of Plaintiff's Films.  See Order of

Seizure, findings of facts, p. 6 ¶6.

9.  Based upon the findings of fact contained in the Order of Seizure

and OTSC re: Contempt, the court ordered that:

(i)   Plaintiff is authorized to enter the "…Patel Video & Variety

and the Vijay Appliances/Vijay Music Centre business premises identified above

and to take all reasonable steps to seize and secure  the following property: A)

any and all unauthorized video cassettes, video compact discs, digital versatile

discs containing copies of Plaintiff's motion pictures including but not limited to

Plaintiff's Films listed in Exhibit "A" to the Declarations submitted in Support

of this Application B) any other infringing video cassettes, video compact  discs

and DVD's of Plaintiff's copyrighted motion pictures including, but not limited

to,  Plaintiff's Films, which do not bear the distinguishing characteristics of

authorized video cassettes video compact discs or DVD's including, but not

limited to: (1) distinctive marks, "heat  stamps", or laser cuts embedded in the

cassette, disc or DVD, (2) holograms affixed to the outside of the cassette, disc,

or DVD, (3) ink jet marking on the spine of the cassette, disc or DVD, (4)

watermarks on labels, (5) security stickers on boxes and cassettes, (6) video tape length commensurate with the running time of Plaintiff's Films, and/or (7) professional packaging and labeling containing the distinctive art work, logo and trademarks of Plaintiff which may bear color or black and white photocopies labels, or handwritten or typewritten labels; and, 8) all masters, transcriptions, recordings, video cassettes and DVD's which infringe on the Plaintiff's copyrights or exclusive rights under copyright in Plaintiff's motion pictures…and seizing said articles as may be found in the possession or control of defendants or their agents or employees at the [Defendants'] places of business…". See, Order of Seizure at p. 7.

    (ii)    That Plaintiff's seizure in the Defendants' Vijay Appliance, Vijay Music Centre premises "shall include any and all basements, tunnels, hallways and upper floors connected to and accessible from or through the main business floor level of the aforesaid premises…" See Order of Seizure, p. 8.

    (iii)    "That the attorneys for Plaintiff shall inventory all articles seized and provide a list of such inventory to the United States Marshal, …and Vijay Appliances/Vijay Music Centre at the Defendants' business premises…" See, Order of Seizure at p. 9.

(iv) "That trained representatives of Plaintiff may accompany and assist the United States Marshals Service in the execution of the Order of Seizure to inspect and photograph the infringing video cassettes, video compact, DVDs and other materials that may be subject to impoundment…" See, Order of Seizure at p.9.

C. Seizure Conducted at the Defendants' Vijay Appliance/Vijay Music Centre Business on August 23, 2003.

1. On August 23, 2003 Plaintiff seized 1,076 digital versatile discs ("DVDs") and 37 "VHS" video cassettes containing unauthorized copies of Plaintiff's Films from the Defendants' Vijay Appliance/Vijay Music Centre business. See, Poppe and Rajput supplemental declarations in support of Plaintiff's application for the Order of Seizure and OTSC re: contempt, Rajput Decl. at ¶5 and Exhibit "A" and "B" thereto; see also, Plaintiff's hearing exhibit "1" on Defendants' motion to suppress.

2. Plaintiff prepared an inventory that identified all of Plaintiff's motion pictures of which counterfeit copies were seized during the Seizure and highlighted the motion pictures titles which have previously been registered with the United States Copyright Office by Plaintiff. See, Plaintiff's supplemental declarations in support of the order of seizure/order to show cause re: contempt;

9

Exhibit "B"; see also, Rajput test. p. 289 lines 12-21; Bhouraskar test. p. 83 lines 3-6, 8-9; see also, Plaintiff's hearing exhibit "1".   See also Poppe Supplemental Declaration filed 2/9/07.

3.   Included in the DVDs and VHS cassettes seized by Plaintiff at the Seizure are 453 DVDs that contained "full length" counterfeit copies of 26 motion pictures in which Plaintiff owns the copyright and exclusive rights under copyright of which 13 titles were registered with the United States Copyright Office.  (See, supplemental declarations in support of the Order of Seizure and OTSC re: Contempt, Exhibit "B" p. 1).

4.   Included in the DVD and VHS cassettes seized by Plaintiff at the Seizure are 37 VHS cassettes (see, for example, Plaintiff's hearing exhibits "2a", 2b", "2c" and "2d") that contained "full length" counterfeit copies of 9 motion pictures in which Plaintiff owns the copyright and exclusive rights under copyright of which 5 titles were registered with the United States Copyright Office.  (See, supplemental declarations in support of the Order of Seizure and OTSC re: Contempt, Exhibit "B" p. 2).

5.   At the Seizure, Plaintiff seized 623 DVDs that contained pirated copies of excerpts of Plaintiff's Films and the films of other film distributors which contained 93 separate and distinct infringing excerpts of motion pictures in which Plaintiff owns the copyright and exclusive rights under copyright and

which plaintiff had registered with the United States Copyright Office.  (See, supplemental declarations in support of the Order of Seizure and OTSC re: Contempt, Exhibit "B" p. 3-8).

      D.      <u>Hearing Testimony and Exhibits on Defendants' Motion to Suppress</u>

      1.  Pursuant to the Order of Seizure, a seizure (the "Seizure") was conducted at the Defendants' Vijay Appliance/Vijay Music Centre business on August 23, 2003 (see Rajput test., p.287 lines 20-23, p. 238 lines 10-17.

      2.  There were a total of seven Deputy United States Marshals assigned to the seizure at Defendants' business and another business located on the same street; three Deputy Marshals for each store plus one Deputy Marshal that moved from store to store (see, Poppe test. p.256, lines 12-24; see also Bhouraskar test. p. 73 lines 5-15).

      3.  Vaibhav Rajput ("Rajput") is the General Manager of Administration for Plaintiff Yash Raj Films (USA) Inc..  He has been employed by Yash Raj since October, 1998 (see, Rajput test. p.286, lines 8-15, p. 286, lines 12-15).

      4.  One of Mr. Rajput's duties for Yash Raj is to work on anti-piracy matters (see, Rajput test. p.286, line 18).

5.   Rajput's anti-piracy work involves both civil seizures and work with various law enforcement agencies in which he identifies counterfeit copies of Yash Raj's products (see, Rajput test. p.286, 287 lines 4-19).

6.   All DVDs distributed by Yash Raj and its affiliates throughout the world are manufactured by Yash Raj Films (USA) Inc. in the United States (see, Rajput test. p.302, lines 2-6).

7.   Authorized Yash Raj DVDs always have the names and addresses of Yash Raj (USA) and its U.K. affiliate and its India affiliate on each DVD's authorized artwork (see, Rajput test. p.311, lines 17-25).

8.   Rajput was present in the Vijay Appliance/Vijay Centre store at 788 Newark Avenue, Jersey City, NJ during the Seizure on August 23, 2003 (see, Rajput test. p. 287 lines 20-22 and p.288, lines 10-11).

9.   While in Mr. Modi's store on August 23, 2003,  Rajput found and confiscated counterfeit and pirated VHS video cassettes and DVDs of Yash Raj's Film products (see, Rajput test., p.289, lines 4, 10-11).

10.   When Rajput selected counterfeit VHS and DVD copies of Yash Raj's Films he delivered them to Megha Bhouraskar, Esq. ("Bhouraskar") who inventoried the counterfeit and pirated copies of Yash Raj Films that Rajput confiscated in the Defendants' store (see, Rajput test. p. 289, lines 12-21; see

also, Bhouraskar test. p. 83 lines 3-6, 8-9; see also Plaintiff's hearing exhibit "1".

11.  Bhouraskar originally entered the Vijay Appliance/Vijay Music Centre business on August 23, 2003 with three Deputy U.S. Marshals (see, Bhouraskar test. p.73, lines 19-23) and with Rajput (see, Bhouraskar test. p. 74, lines 11-14).

12.  Bhouraskar's function during the seizure conducted at the Vijay Appliance/Vijay Music business was to inventory counterfeit products identified by Rajput.  See, Bhouraskar test. p.77, lines 3-8, p.78, lines 11-21.

13.  Modi stood in front of Bhouraskar while she conducted her inventory and appeared to be watching her (see Bhouraskar test. p. 102, lines 23-25 and p.103,  lines 1-6 and 18-19); see also Bhouraskar test. p. 78, lines 2-7.

14.  Bhouraskar numbered pages 1-7 of the handwritten inventory compiled during the Seizure at the Vijay Appliance/Vijay Music business (see, Bhouraskar test. p.79, lines 16-18) and was responsible for collecting all of the inventory pages completed during the Seizure and providing a copy to Modi and to the U.S. Marshal's Service (see, Bhouraskar test. p.80, lines 3-13; see also Plaintiff's Exhibit "1").

15.  Bhouraskar actually prepared pages 4, 5 and 6 of the inventory (see, Bhouraskar test. p.83, lines 3-6) and made sure that the titles on the seized

counterfeit products correlated with the titles that she was identifying on the inventory (see, Bhouraskar test. p.83, lines 8-9).

16.   Rajput brought products he had identified as counterfeit to Bhouraskar, who would then inventory the products (see Bhouraskar test. p.83, lines 14-24; see also Bhouraskar test.p.84, lines 1-4 and lines 22-25 and p.85, lines 4-18; see also generally, Bhouraskar test., p.89).

17.   The products identified by Rajput as counterfeit were then boxed.  The boxes were marked for identification (see, for example, Plaintiff's hearing exhibits "4a" and "4b") and were, subsequently, transported to Plaintiff's law firm's New York offices (see Bhouraskar test. p.87, lines 16-25 and p.88, lines 1-18; see also, Poppe test. p. 278 lines 4-9).  All of the products inventoried by Bhouraskar on pp. 4 and 5 and the first 3 lines of p. 6 of the inventory were delivered to Bhouraskar by Rajput from the retail display area of the Vijay Appliance/Vijay Music store business (see Bhouraskar test. p.89-93).

18.   The song compilation "Dance with Me" contained an unauthorized excerpt of the Yash Raj film "Kabhie Kushi Kabhie Gham" (see Bhouraskar test. p.95, lines 8-16).  The same song compilation DVD also contained excerpts of films not owned by Yash Raj Films.   Yash Raj does not authorize other companies' films to be contained on the same DVD that contains excerpts of Yash Raj films (see Bhouraskar test. p96, lines 11-23)

19.  Modi concedes that the "Dance with Me" DVD was such a song compilation and was found in his store, (see Modi test. p.52, lines 16 and p.54, lines 8-19).

20.  The song compilation "Dance with Me" which contained an unauthorized copy of the Yash Raj Film "Kabhie Kushi Kabhie Gham" was recovered in both the retail area, and in the storage area (see Bhouraskar test. p.102, lines 14-19); see also, Plaintiff's hearing Exhibit "1").

21.  On August 23, 2003 Yash Raj did not release Yash Raj Films in VHS cassette format, (see, Rajput test. p.298, lines 23-25, p.299, lines 1-7).

22.  The VHS cassettes containing counterfeit copies of Yash Raj Films taken from Defendants' business were seized from the retail display area of the Vijay Appliance/Vijay Music business (see, Rajput test. p.304, lines 12-14; see also, Bhouraskar test. p76, p. 80 lines 17-25 pp. 83-85, 88-89, 91-92; see also Poppe test. p.259, lines 17-22.

23.  On August 23, 2003, at the time of the Seizure, Modi received and signed for the U.S. Marshal's form 285, and the Order of Seizure and supporting document and the inventory of Plaintiff's Seizure, all of which have been filed with the Clerk. See, Poppe test. p. 241, lines 9-16.

24.  The VHS cassettes containing copies of the Yash Raj film "Saathiya" were seized from the Defendants' store. The art work is typical of

home-labeled VHS cassettes containing counterfeit copies of Yash Raj films the (see Plaintiff's hearing exhibits "2-a", "2-b", "2-c" and "2-d" in evidence which were handed to Bhouraskar by Rajput in the Vijay Appliance/Vijay Music retail store and were inventoried by Bhouraskar (see Bhouraskar test. p.108 and 109).

25.   During the course of his search of the Vijay Appliance/Vijay Music Centre retail premises, Rajput entered a hallway that was accessible from behind one of the retail store sale counters and observed that it was filled with luggage which was stored by the Defendants in the hallway (see, Rajput test p.290, lines 10-12; see also Plaintiff's hearing exhibit "3").  This was part of defendants' business premises.

26.   On entering the hallway, Rajput also observed a door with a glass pane located above the door and Rajput used a piece of Defendants' luggage stored in the hallway to stand on and look through the glass pane (see, Rajput test. p.290, lines 16-24; see also, Poppe test. 255, lines 8-20).

27.   On looking through the glass pane, Rajput observed a stack of DVDs under a chair (see Rajput test. p.291, lines 2-9 and p.292, lines 10-17). The DVDs were approximately 10 feet away on the other side of the door (see, Rajput test. p. 317, lines 1-10); see also, Plaintiff's hearing exhibit "12".  It was reasonable to conclude that an area where a stack of DVDs was stored was part of defendants' business premises, because storage of DVDs was part of

defendants' business, but was not a part of the business of the doctor who shared at area.

28.  Rajput asked defendant Modi  for keys to the door which was locked and, after trying a set of keys hanging on the wall in the Vijay Appliance/Vijay Music store, Rajput obtained a set of keys from Mr. Modi, one of which opened the door (see, Rajput test. p.292, 293; see also, Poppe test. p. 256, lines 11-24, p. 257 lines 7-21).  Thus, Modi voluntarily gave access to the area where the stack of DVD's was observed.

29.  Once the door was unlocked, a Deputy U.S. Marshal first entered the area beyond the locked door and then permitted Rajput to enter (see, Rajput test. p.293, lines 18-23; see also, Poppe test. p. 259 lines 5-18.   The area to the rear of Defendants' store was shared with a doctor, who used it as a clinic on a part-time basis.  It contained a storage closet.  See Modi test. 18-19, p.162, lines 19-21; Patel test. p. 158, line 25.   The storage closet was part of defendants' business premises, because the doctor allowed Modi to store articles therein, and Modi did so.   Modi used the storage closet for Modi's own business purposes and the room was kept open (See, Modi test. p.235, lines 16-24), as opposed to the doctor's main office, which was locked (see, Modi test. p.235, lines 24-25).   The storage closet was filled with counterfeit copies of Yash Raj Films (see, Rajput test. p.294, lines 19-25 and p.297; see also Plaintiff's hearing

exhibits "13" and "14"; see also, Poppe test. p. 259, lines 17-22). DVDs containing single motion picture titles and DVD containing  unauthorized excerpts of Plaintiff's Films (commonly known as "song compilations") (see Modi test.64, lines 6-10) were found.  The titles inventoried by Bhouraskar from the storage closet used by Modi are contained from lines 4 through the end of p. 6 of Plaintiff's Exhibit "1" (see Bhouraskar test. p.14, lines 1-22).

30.  Modi at first denied knowledge of the DVDs recovered from the storage closet (Modi test. p. 161, lines 1-4); although he admitted that some of the boxes in the storage closet that contained the DVDs may have his name and address on the boxes (Modi test. p. 161, lines 5 and 6).

31.  Modi then testified that he allows people from Canada, New York and New Jersey to use the storage room for DVDs (Modi test. p.163, lines 18-25).

32.  Modi then testified that he did not know how the DVDs seized by Plaintiff were placed into the storage closet (Modi test. p. 205, line 25 and p. 206, lines 1 and 2).

33.  Modi denies being present when the storage closet was stocked with DVDs (Modi test.p. 200, lines 19-25); but he also testified that "Canadian" distributors "forced" him to let them use the storage closet (Modi test.p.197, line 21) and, alternatively, that sometimes the door was left open and unidentified

individuals simply put the DVDs in the storage closet without asking (Modi test. p. 96, lines 21 and 22 and p. 200, lines 1-3 and lines 19-25).  Modi also stated that some of the DVDs were shipped directly to him (Modi test. p. 201, lines 1-7); but then denied that the DVDs in the storage closet were his (Modi test. p.205, lines 19-25).

34.  Modi claimed that the DVDs found in the storage room were damaged DVDs (see Modi test. p.61, line 13);  then, Modi asserted that he did not know if they were damaged (see Modi test. p.64, line 23); then, Modi asserted that some DVD's appeared to be damaged when he observed them outside the storage closet (see Modi test. p.65, lines 17-23; he then speculated that perhaps Poppe and Rajput had  placed the DVDs there (see, Modi test. p.63, lines 23-25; p.64, lines 1-7).

35.  Modi concluded by stating that he does not know how the DVDs got into the storage area (Modi test. p. 205, line 25 and p. 206, line 1 and 2).

36.  All of Modi's testimony about the counterfeit DVD's in the storage closet was incredible.  Indeed, Modi admitted to being untruthful in his testimony at the Hearing, (see Modi test. p. 230, lines 14-15, p.232, lines 16-17). The counterfeit DVD's found in the storage closet belonged to defendants.

37.  Modi clearly understands that DVDs containing "song compilations" have excerpts of motion picture song scenes from different companies' motion pictures, (see Modi test. p. 51, lines 20-25; p.52, lines 1-25).

38. Manisha Patel worked for the Vijay Appliance/Vijay Music Centre business for between three and four years, (see Modi test. p.34, lines 19-20).

39. Manisha Patel was a manager, as indicated by her business card (see Plaintiff's hearing exhibit "7") She signed and was subject to the permanent injunction ordered by the Court (see, Stipulation of Settlement and Order entered on October 9, 2002; see also, Patel test. p. 149 lines 17-25).

40.  Manisha Patel was bound by the Order to turn over all counterfeit or pirated products to plaintiff (see, Stipulation of Settlement and Order at p. 3) and was prohibited from possessing, transacting or assisting any third party in possessing or transacting any counterfeit copies of plaintiff's motion pictures (see Stipulation of Settlement and Order at p3).

41.  The Court finds from the evidence that Manisha Patel was well aware of the presence of the counterfeit copies of plaintiff's films which were seized.

42.  Plaintiff has incurred legal fees and disbursements in the amount of $23,130.50 in the course of its application for and execution of the

Order of Seizure (see, supplemental declaration, Exhibit "J"); and $16,929.75 in its opposition to Defendants' motion to suppress (see, Poppe Declaration in opposition to Defendants' motion to suppress, Exhibit "F"; and, an additional $21,863.15 in the conduct of the hearing ordered by this Court.   The total billed by Plaintiff's attorneys for fees and disbursements for these matters from August, 2003 to the present for their work on the Order of Seizure and OTSC re: Contempt is $61,923.40.  See, supplemental declaration of William M. Poppe submitted herewith.

II.   <u>CONCLUSIONS OF LAW</u>

A.  <u>The DVDs seized from the storage area used by Defendants' business containing counterfeit copies of Yash Raj Films were properly seized.</u>

1.  Rajput made his observations of the DVDs located on the other side of the locked door from the hallway, an area that was obviously used by Defendants for their business purposes and in which he was expressly permitted to be.

2.  All areas from which counterfeit copies of Yash Raj films were seized were defendants' business premises, and thus within the scope of the August 19, 2003 Order of Seizure.

3.  All items seized were properly seized.

B.   <u>Copyright Infringement</u>

1. Certificates of registration issued by the United States Copyright Office constitute prima facie evidence of a copyright's validity.  <u>Adrien v. Southern Ocean County Chamber of Commerce</u>, 927 F.2d 132, 134 (3d  Cir. 1991); <u>Williams Electronics, Inc. v. Artic Int'l Inc.</u> 685 F.2d 870, 873 (3d Cir. 1982).

2.  Copyright infringement is established if the plaintiff proves that it owned the copyrighted material, and that the copyrighted material was copied by the defendant.  <u>Masquerade Novelty, Inc. v. Unique Indus.Inc.</u>, 912 F.2d 663, 667 (3d Cir. 1990); <u>Major League Baseball Promotion Corp. v. Colour-Tex, Inc.</u>, 729 F. Supp. 1035, 1039 (D.N.J. 1990).

3.  Copying is a "shorthand reference to the act of infringing any of the copyright owner's five exclusive rights set forth at 17 U.S.C. § 106" (internal quotations and citation omitted).  <u>Ford Motor Co. v. Summit Motor Prods.</u>, 930 F.2d 277, 291 (3d Cir. 1991).

4.  Because direct evidence of copying is rarely available, it may be inferentially proven by "showing that the defendant had access to the allegedly infringed work and that the allegedly infringing work is substantially similar to the copyrighted work," and, of course, that one of the rights guaranteed to copyright owners by 17 U.S.C. § 106 is implicated by the defendant's actions.

Whelan Assocsl, Inc. v. Jaslow Dental Lab., 797 F.2d 1222, 1231-32 (3d Cir.
1986).

    5.  Yash Raj has shown willful infringement by all defendants.  See
Findings of Fact No. 5.

    C.  <u>Rannade, Modi and Patel are in contempt of the October 9, 2002 Order
of this Court</u>

    1. Upon proceedings to punish for contempt, the propriety of the
decree is not open to dispute. <u>See</u> <u>In re Lennon</u>, 166 U.S. 548, 557
(1897)(holding an employee of enjoined railroad company liable for refusing to
obey instructions).

    2. Civil contempt liability attaches upon violation of this Court's
Order of which each of the Defendants had actual notice.  <u>Thompson v. Johnson</u>,
410 F. Supp. 633, 640 (E.D. Pa. 1976), <u>aff'd</u>., 556 F.2d 568 (3d Cir. 1977).

    3. Once a party has knowledge of a court's order, the party is
required, at the very least,  to take all reasonable steps within its ability to
comply with same. <u>Robin Woods Inc. v. Woods</u>, 28 F.3d 396, 399 (3d Cir.
1994).

    4.  Anyone who knowingly assists or facilitates the violation of an
injunction is subject to civil proceedings for contempt. All defendants did so.
Those who have knowledge of a valid court order and abet others in violating

the order are subject to the court's contempt powers. Roe v. Operation Rescue, 919 F.2d 857, 871 (3d Cir. 1990).

    D.    <u>Plaintiff is entitled to an award of statutory damages</u>

    1.  Plaintiff seeks only statutory damages, not actual damages.  The base range for statutory damages extends from $750 to $30,000 per work or title infringed.  17 U.S.C. § 504(c)(1).

    2.  Where there is evidence that the defendant "was not aware and had no reason to believe that his or her acts constituted an infringement of copyright," the statutory award may be remitted down to $200 for each work infringed.  17 U.S.C. § 504 (c)(2).  There is no such evidence.

    3.  Conversely, where the defendant's activity is knowing or willful a court may increase the statutory damage award above the base range, up to a maximum of $150,000 per title or work, subject to the limitations of 17 U.S.C. § 504(c)(2).

    4.  "Willfully" means with knowledge that the defendant's conduct constitutes copyright infringement, or, where defendant acts with "reckless disregard" for the copyright holder's rights.  Fitzgerald Pub. Co. v. Baylor Pub. Co., 807 F.2d 1110, 1115 (2d Cir. 1986).

    5.  Defendants' knowledge or reckless disregard has been proven directly.

24

6.  Defendants having been sued in other copyright infringement cases and Defendants' past practice of infringing other works is another basis for finding Defendants' infringement to be willful. See Lauratex Textile Corp. v. Alton Knitting Mills, 519 F. Supp. 730, 733 (S.D.N.Y. 1981).

7.  In actions for statutory copyright infringement, even the innocent intent of a defendant does not constitute a defense to a finding of liability.  Broadcast Music, Inc. v. 84-88 Broadway, Inc., 942 F. Supp. 225, 231 (D.N.J. 1996)(quotations and citation omitted).

8.  Where a plaintiff has marketed authorized copies of the films in question with plaintiff's copyright notice affixed (as Plaintiff in this case has done with Plaintiff's Motion Pictures), Defendants are precluded from asserting that the infringement was "innocent"  See 17 U.S.C. §§ 401(d), 402(d).  In these instances, the minium amount of damages is $750.00 per title.  See 17 U.S.C. § 504(c).

9.  A court may award statutory damages even if there is no evidence whatsoever before the court as to the defendant's profits, the defendant's costs avoided, or the plaintiff's lost profits.  See Bly v. Banbury Books Inc., 638 F. Supp. 983, 987 (E.D. Pa.1986).

10.  Statutory damages are designed not solely to compensate the copyright owner for losses incurred, but also to deter future infringement. F.W. Woolworth Co. v. Contemporary Arts, Inc., 344 U.S. 228,233 (1952).

11.  In determining the amount of statutory damages to award, "Courts... have focused largely on the element of intent, and the per infringement award tends understandably to escalate, in direct proportion to the blameworthiness of the infringing conduct". Original Appalachian Artworks, Inc. v. J.F. Reichert, Inc., 658 F. Supp. 458, 465 (E.D. Pa. 1987) (internal quotations and citation omitted).

12.  A statutory damages award is payable "for all infringements involved in the action,  with respect to any one work. 17 U.S.C.§ 504(c)(1).

13.  Where the Defendants' pirated "compilation" DVDs contain copies of unauthorized excerpts from several different and independent copyrighted works, the applicable minimum damages will be multiplied by the number of such titles contained within each pirated compilation work.  MCA Television Ltd. v. Feltner, 89 F. 3d 766, 768-71 (11 th Cir. 1996) (awarding statutory damages for each televison program the infringer broadcast because each was independently copyrightable, despite that each program was part of a "series" sold by plaintiff as a "block"). Twin Peaks Prod., Inc. v. Publ'ns Int'l,

Ltd., 996 F.2d 1366, 1381 (2d Cir. 1993)(awarding damages for each of eight television program plots discussed and sold in defendant-infringer's one book).

14.  "[I]n deciding upon the appropriate statutory damages award" a court may consider "the expenses saved and the profits reaped by the infringers,... revenues lost by the plaintiff,... and the deterrent effect on others besides the defendant". See Fitgerald Publ'g Co. v. Baylor Publ'g Co., 807 F.2d 1110, 1117 (2d Cir. 1986)

15.  Plaintiff has accurately calculated the number and type of infringements as a basis for statutory damages arising from the seizure.  That calculation is accurately summarized at paragraphs 11-16 of the Supplemental Declaration of William M. Poppe, filed 2/9/07, Docket entry #158.

16.  While defendants seek a "hearing" as to those infringements, there is no need for such a hearing.  Defendants do not point to any alleged factual inaccuracies in Plaintiff's calculations, and the evidence as to the items seized and their copyrighted status and Registration status was explored at the suppression hearing.  Accordingly, the matter is ripe for determination.

17.  Paragraph 13 of the Poppe Supplemental Declaration referenced above lists 13 infringements of Registered Works in DVD format, 5 infringements of Registered Works in VHS format and 93 infringements of Registered Works in "compilation/multiple title" format, for a total of 111

27

infringements of Registered Works.  Far more counterfeit copies of each infringement were seized.

18.  Because there were many copies of some of those works seized, and because infringement was willful, the Court feels that minimum statutory damages would not be fair to Yash Raj.  Maximum statutory damages of $150,000 per work would be unrealistic.  In view of the willful nature of the infringement and the clear need for deterrence, the appropriate amount of statutory damages is $10,000 per work, under all the circumstances.

19.  Statutory damages in the amount of $ 1,110,000 are awarded to plaintiff and against defendants, jointly and severally.  This amount represents $10,000  per Registered work.   Plaintiff does not seek statutory damages for unregistered works, even though it is the owner of a copyright thereon.

E.    Plaintiffs' Recovery of Reasonable Attorney's Fees and Disbursements is Authorized by Statute and Case Law

1.  The Copyright Act authorizes a court to award "reasonable" attorney's fees to the prevailing party in a copyright infringement action. See 17 U.S.C. § 505.

2.  Circumstances warranting an award of attorney's fees to a plaintiff include the defendant's deliberate infringement and the need for compensation to a party for defending or enforcing its copyrights.  See  Fogerty

v. Fantasy Inc., 510 U.S. 517, 534 n.19 (1994) (citing Lieb v.Topstone Indus.,
788 F.2d 151, 156 (3d Cir. 1986)).  Those circumstances are fully present here.

      3. An award of attorneys' fees and costs to the prevailing party in a
civil contempt action is determined according to the "lodestar method."
Microsoft Corp. v. United Computer Res. of N.J., Inc., 216 F. Supp. 2d 383, 387
(D.N.J. 2002). The lodestar calculation involves determining the number of
hours reasonably expended on the litigation multiplied by a reasonable hourly
rate,  and is presumed to yield a "reasonable fee." Id. (Citation omitted).

     The party seeking attorneys' fees has the burden of establishing the
reasonableness of the fees sought and submitting evidence to support the rates
and hours claimed.

     Once the party seeking fees provides such evidence, the burden shifts to
its adversary to contest, with sufficient specificity, the reasonableness of the
hourly rate or the reasonableness of the hours expended.  If the party opposing
the fee application meets its burden, the Court has wide discretion to adjust the
attorneys' fee for inadequate documentation, duplication of effort,
unreasonableness of hours expended, or lack of relation to the results obtained.
Id.

      4.  Attorney's Fees in the amount of $55,336 are reasonable and
are awarded to plaintiff in support of this award of Attorney's Fees and costs, the

Court notes the following.  Plaintiff's attorney, William M. Poppe, has filed a

Declaration signed on October 22, 2004 which supports his application for

Attorney's Fees.  Attached thereto are his firm's billing records, which

demonstrate that plaintiff was billed for Mr. Poppe's services at an hourly rate of

$275.  The Court finds that this hourly rate is eminently reasonable for the nature

of the services provided in this specialized area of the law.  The hours expended,

almost exclusively by Mr. Poppe, are set forth in detail in billings to his client

dated September 15, 2003, July 6, 2004 and October 22, 2004.  In those billings

the nature of the services is described in detail, as well as the hours expended.

Defendants suggest that some of these services were performed in connection

with matters other then the instant matter and there is some support for that

suggestion in plaintiff's counsel's time records.  There are a few references to a

seizure at Patel Video, but all other  services described are with reference to the

instant matter.  Accordingly, the Court will disregard half of the hours spent on

August 23, 2003 by Mr. Poppe, Ms. Bhouraskar and Mr. Shaikh, since the time

entries for that date referred to a seizure conducted at Patel Video as well as at

the premises of defendants.  This will reduce the fee claim by 10 hours at a rate

of $275 and 5 hours at a rate of $150, for a total reduction of $3500.  Other than

this reduction, the  Court finds that all of the services described in the above

time records were necessary and reasonable, and the amounts charged therefor

are reasonable.  In addition, Mr. Poppe  requests $750 for preparation of the Supplemental Declaration filed February 9, 2007, referred to above, which the Court has found helpful.   Given the detail and scope of that Supplemental Declaration, the Court finds that $750 is an eminently reasonable fee for the preparation of that document.

5.  Accordingly, fees billed on September 15, 2003 in the amount of $16,789.75, plus fees billed on July 6, 2004 in the amount of $16,801.25, plus fees billed on October 22, 2004 in the amount of $20,995.00, plus $750, are awarded to plaintiff, for a total of $55,336. in fees.  In addition, costs in the amount of $2,840.75 billed on September 15, 2003, costs in the amount of $128.50 billed on July 6, 2004 and costs in the amount of $868.15 billed on October 22, 2004 are reasonable and are awarded to plaintiff, for a total award of costs of $3,837.40.

6.  Accordingly, Judgment will be entered in favor of plaintiff and against defendants Rannade Corporation, Jayesh Modi, and Manisha Patel jointly and severely in the amount of $1,169,173.40, consisting of $1,110,000 in statutory damages, $55,336 in attorney's fees and $3,837.40 in expenses.

/s/ John C. Lifland, U.S.D.J.

DATED: May 17, 2007